**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CARLTON L. HAMMONDS,
      Petitioner,

v.
                                      Case No. 8:21−cv−147−TPB−TGW
                                      Case No. 8:14-cr-406-TPB-TGW

UNITED STATES OF AMERICA,
      Respondent.
_____

**ORDER**

Carlton L. Hammonds moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for conspiring to possess cocaine with the intent to distribute it, for which he is serving a sentence of 120 months. He challenges his conviction and sentence on five grounds. Hammonds is entitled to no relief because his claims are procedurally defaulted and lack merit.

## I.    Background

From an unknown date through August 22, 2014, Hammonds participated in an unlawful agreement with others to possess with the intent to distribute 500 grams or more of cocaine. [Crim. Doc. 27 at 13–14 (plea agreement); Crim. Doc. 50 at ¶¶15–16 (presentence report); Crim. Doc. 79 at 6–10 (plea hearing transcript)] He both purchased and sold cocaine, including selling cocaine to an undercover law enforcement detective. (*Id.*)

A search warrant was executed at Hammonds's home. (Crim. Doc. 50 at ¶17) During the search of his primary bedroom, law enforcement discovered

1

three presses containing cocaine, numerous cellophane baggies inside a shoebox in a closet, two digital scales in a dresser, and numerous cellophane baggies containing cocaine residue inside a dresser drawer. (*Id*.) Law enforcement also discovered a safe that contained $7,000.00 in cash, an automatic handgun, and a brown paper bag that held baggies that contained cocaine. (*Id*.) Hammonds was held accountable "for at least **a total of 863.74 grams of cocaine**."[1] (Crim. Doc. 50 at ¶ 18) (emphasis in original).

Hammonds was charged with conspiring to possess 500 grams or more of cocaine with the intent to distribute it, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), and three counts of distributing and possessing with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Crim. Doc. 1) An Information and Notice of Prior Convictions notified Hammonds that he was subject to an enhanced sentence of ten years to life imprisonment under § 841(b)(1)(B) based on two prior felony drug convictions. (Crim. Doc. 19) Those prior felony drug convictions included a 1998 Florida conviction for possession of marijuana and 1999 federal conviction for conspiracy to possess with the intent to distribute cocaine. (*Id*.)

---

[1] Hammonds is deemed to have admitted the undisputed facts that derive from the presentence report. *See United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) ("Facts contained in a [presentence report] are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity."); *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("[A] failure to object to allegations of fact in a [presentence report] admits those facts for sentencing purposes.").

Under a plea agreement Hammonds pleaded guilty to the conspiracy charge, and the United States agreed to dismiss the remaining charges. (Crim. Doc. 27) The district court adjudicated Hammonds guilty of the conspiracy charge and sentenced him to the statutory minimum term of 120 months. (Crim. Doc. 54)

Hammonds timely appealed, but the circuit court remanded to the district court to determine whether Hammonds intended to waive his right to appellate counsel. *United States v. Hammonds*, 782 F. App'x 899 (11th Cir. 2019). On remand the district court ruled that Hammonds did not intend to waive his right to appellate counsel and appointed the Office of the Federal Defender to represent him on direct appeal. (Crim. Docs. 93, 98–100) However, before the circuit court ruled on the merits of Hammonds's appeal, it dismissed the appeal pursuant to his motion for voluntary dismissal. (Crim. Doc. 108)

## II.   Analysis

Hammonds timely moves to vacate his conviction and sentence on five grounds. He claims that: (1) his guilty plea was unknowing and involuntary because he pleaded guilty without having seen any evidence and because Assistant United States Attorney James C. Preston, Jr., threatened him; (2) his guilty plea was involuntary because law enforcement coerced him to confess his guilt; (3) the United States failed to disclose exculpatory evidence; (4) his

3

sentence was improperly enhanced under 21 U.S.C. § 841(b)(1)(B); and (5) counsel rendered ineffective assistance.

## A.   Procedural Default

The United States correctly argues that Hammonds procedurally defaulted his claims in Grounds One through Four because he raised them neither at trial nor on direct appeal.  "[A] 'procedural default' occurs when a defendant raises a new challenge to his conviction or sentence in a § 2255 motion." *Seabrooks v. United States*, 32 F.4th 1375, 1383–84 (11th Cir. 2022) (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)).  "'The procedural-default rule is . . . a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'" *Foster v. United States*, 996 F.3d 1100, 1106 (11th Cir. 2021) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).  "Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn,* 365 F.3d at 1232.

Hammonds neglected to argue to the district court that he had not seen any evidence, the prosecutor threatened him, law enforcement coerced him, the United States failed to disclose exculpatory evidence, or his sentence was improperly enhanced.  And, although he filed a notice of appeal and was appointed appellate counsel, Hammonds voluntarily dismissed his appeal before the circuit court issued a ruling on its merits.  Therefore, Hammonds

4

procedurally defaulted his claims in Grounds One through Four because he neglected to present them to the district court and voluntarily chose to forgo his right of review on direct appeal. *See Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) (ruling that a § 2254 claim was procedurally defaulted because the petitioner presented his claim on direct appeal but subsequently voluntarily dismissed it); *see also Johnson v. United States*, No. 4:16-228, 2016 WL 4445763, at *2 (S.D. Ga. Aug. 22, 2016) ("[Defendant] appealed but voluntarily dismissed that proceeding before the Eleventh Circuit ever addressed his issues presented. In doing so, he effectively never appealed.").

"If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused." *Seabrooks*, 32 F.4th at 1384 (citing *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)). "To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence." *Id*.

### 1.    Cause and Prejudice

As cause to excuse his procedural default of his claims in Grounds One through Four, Hammonds claims that counsel was ineffective. "A petitioner can establish cause by showing that a procedural default was caused by constitutionally ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)."

5

*Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002).  However, to excuse his procedural default, Hammonds's "claim[s] of ineffective assistance must have merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).  He must show that "the default was caused by his attorney's ineffective assistance and actual prejudice resulted."  *Reece v. United States*, 119 F.3d 1462, 1468 (11th Cir. 1997).

"Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689 (citations omitted).  To prove deficient performance, "[a] petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.'"  *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).  Because of the "strong presumption in favor of competence," a petitioner seeking to prove ineffective assistance of counsel "must establish that no competent counsel would have taken the action that his counsel did take."  *Chandler v. United States*, 218 F.3d 1305, 1314–15 (11th Cir. 2000) (*en banc*).

To overcome the procedural default, in addition to showing counsel's deficient performance, Hammonds must also show that he suffered actual prejudice from counsel's deficient performance. "'Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to the petitioner's actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Granda v. United States*, 990 F.3d 1272, 1288 (11th Cir. 2021) (quoting *Fordham v. United States*, 706 F.3d 1345, 1350 (11th Cir. 2013). "The actual prejudice standard is 'more stringent than the plain error standard.'" *Id.* (quoting *Parks v. United States*, 832 F.3d 1244, 1245 (11th Cir. 1987)).

### a.   Ground One

Hammonds claims that his plea was unknowing because he pleaded guilty "without having seen any evidence." (Civ. Doc. 4 at 22)  Hammonds neglects to support this vague claim with any detail about the evidence he did not review or any explanation about how his review of that evidence would have altered his decision to plead guilty.  A petitioner is not entitled to relief when his claim is merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (explaining that a defendant must allege

"reasonably specific, non-conclusory facts . . . to undermine confidence in the outcome").

Also, Hammonds claims that his plea was involuntary because he was coerced into pleading guilty. He claims that, at his first appearance in federal court, AUSA Preston threatened, "I'm going to stick it to you this time, you got off easy last time." (Civ. Doc. 4 at 22) He argues that counsel rendered ineffective assistance, which excuses his procedural default of this claim, by not reporting this threat to the district court and by not requesting an evidentiary hearing. (*Id*. at 23)

First, Hammonds undermines the claim that his guilty plea was involuntary by repeatedly requesting to be resentenced. In his motion, he "request[s] the three levels for acceptance of responsibility." (Civ. Doc. 4 at 23) In his reply, he requests, "resentence me according to the amount testing positive according to forensic lab chemists, 148.66 grams." (Civ. Doc. 20 at 7)

Also, his claim is refuted by his sworn statements at his change-of-plea hearing. At the hearing Hammonds acknowledged that he reads, speaks, and understands English and that he earned a high school diploma. (Crim. Doc. 79 at 10) He confirmed that he reviewed the plea agreement with counsel and understood it entirely. (*Id*. at 5, 11, and 14) He confirmed that he understood the elements of the conspiracy offense and the applicable statutory penalties and that he was satisfied with counsel's representation. (*Id*. at 16–17)

Hammonds explicitly testified that he was not coerced to plead guilty:

> THE COURT:        [T]his plea agreement is the entire agreement between you and the government and . . . there are no other promises, agreements, or representations except for what's written down here.
>
>                   So if you think someone's promised you something in order to get you to plead guilty, if it isn't written down here, then it doesn't count and you can't rely on it.
>
>                   Do you understand that?
>
> [HAMMONDS]:       Yes.
>
> THE COURT:        Do you have question about that?
>
> [HAMMONDS]:       No.
>
> THE COURT:        Are you pleading guilty freely and voluntarily?
>
> [HAMMONDS]:       Yes.
>
> THE COURT:        Has anyone forced you or coerced you in order to get you to plead guilty?
>
> [HAMMONDS]:       No.

At the conclusion of the plea hearing the magistrate judge found that Hammonds was pleading guilty freely, voluntarily, and knowingly with the advice of counsel, and Hammonds never objected to this finding. (*Id*. at 29–30)

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is

open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). However, "the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."). "[T]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

Hammonds cannot overcome his procedural default of this claim because he neglects to allege that he informed counsel about the alleged threat. And, even assuming counsel knew of the alleged threat, Hammonds is entitled to no relief because, other than his conclusory assertion that the prosecutor threatened him, he offers no evidence to disavow his affirmations under oath that he was not coerced to plead guilty.

Furthermore, Hammonds is not entitled to an evidentiary hearing on this claim. A § 2255 movant is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (citation omitted). "[A] petitioner need only allege—

10

not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. "However, a district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Winthrop-Redin v. United States*, 767 F.3d 1210, 12156 (11th Cir. 2014) ("The district court is entitled to discredit a defendant's newly-minted story about being threatened when that story is supported only by the defendant's conclusory statements."); *see also Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) (explaining that a district court need not conduct an evidentiary hearing if the record conclusively shows petitioner is not entitled to relief). When a petitioner "alleg[es] that [his] guilty plea was induced by threats or coercion[,] . . . the allegations of the petitioner accompanied by his own affidavit are insufficient to mandate an evidentiary hearing in the face of a Rule 11 record detailing statements by the petitioner that his plea was not induced by any threats or coercion." *Matthews v. United States*, 533 F.2d 900, 902 (5th Cir. 1976).

To refute his sworn statements at the plea hearing, Hammonds offers only his self-serving allegation that the prosecutor threatened him. Because his claim is not supported "by credible third party affidavits or other documentary evidence," he is not entitled to an evidentiary hearing on this claim. *Id.*; *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) (concluding that the district court did not abuse its discretion in denying relief

11

without an evidentiary hearing when petitioner's ineffective assistance claims were contradicted by his statements under oath at the plea colloquy); *Reed v. United States*, 792 F. App'x 676, 677–78 (11th Cir. 2019) (same); *Cedeno-Gonzales v. United States*, 757 F App'x 868, 871 (11th Cir. 2018) (same); *Levy v. United States*, 665 F. App'x 820, 823–24 (11th Cir. 2016) (same).

## b.   Ground Two

Hammonds claims that his guilty plea was involuntary because law enforcement coerced him to confess his guilt. (Civ. Doc. 4 at 22)  According to Hammonds, at the time of his arrest on August 22, 2014, Clearwater Police Detective Nate Burnside asked him to become a confidential informant.  (*Id*.) When Hammonds—who was unrepresented—refused, Burnside threatened to arrest his wife, take her car, and "hold her for no reason other than to make [him] cooperate." (*Id*.)  Burnside warned Hammonds that AUSA Preston would "stick it to [Hammonds]."  (*Id*.)

A month later and with the assistance of counsel, Hammonds presented a proffer to Burnside.[2]  (*Id*.)  Hammonds contends that AUSA Preston violated

---

[2] Hammonds was first represented by Yvette Gray of the Office of the Federal Defender, who initiated the preparation of the proffer. (Civ. Doc. 4 at 22; Civ. Doc. 11-3 at 7–8)  Next, Hammonds retained Mark L. Mohammed, who was present when the proffer was presented to Burnside at the Pinellas County jail. (Civ. Doc. 4 at 22; Civ. Doc. 11-3 at 2)  Approximately two weeks after retaining Mohammed, Hammonds fired him and retained Grady C. Irvin, Jr., who represented Hammonds through sentencing.  (Civ. Doc. 11-3 at 2; Civ. Doc. 11-2 at 2–7)  Martin DerOvanesian of the Office of the Federal Defender represented Hammonds on direct appeal.  (Civ. Doc. 11-3 at 4–5)

that proffer by using his confession to Burnside against him. (*Id.*) He claims that he was charged "with an additional estimated amount of Ghost Dope a little over 260 grams." (*Id.*) Hammonds further claims that counsel rendered ineffective assistance, which excuses his procedural default of this claim, by failing to report that the prosecutor "violat[ed] . . . the proffer agreement[,]" "coerced [him] into making statements without legal representation[,]" and "threated [him] with superseding indictments if the weight in the case was corrected." (*Id.* at 23)

Again, other than his own conclusory assertions, Hammonds offers no evidence to disavow his affirmations under oath that he was not coerced to plead guilty. Hammonds agreed that he was pleading guilty "freely and voluntarily" and "without threats, force, intimidation, or coercion of any kind" and that he was pleading guilty because he was "in fact guilty." (Crim. Doc. 27 at 12–13) At the plea hearing he confirmed that he was pleading guilty "freely and voluntarily," that no one had "forced [him] or coerced [him]" to do so, and that, except for the promises set forth in the plea agreement, no one made any promises to obtain his plea. (Crim. Doc. 79 at 27) He is not entitled to an evidentiary hearing on this claim because the claim is not supported "by credible third party affidavits or other documentary evidence." *See Matthews*, 533 F.2d at 902.

13

### c.      Ground Three

Hammonds claims that the United States failed to disclose the results of forensic laboratory tests, conducted before he pleaded guilty, that contained exculpatory evidence.  (Civ. Doc. 4 at 22)   According to Hammonds, those results showed that the substance discovered by law enforcement in his safe constituted only 148.66 grams of cocaine, while the remaining grams discovered in the safe constituted unidentified byproduct.  (*Id*.)   Contrary to the lab results, Hammonds argues, the presentence report erroneously states that law enforcement discovered "a total of **408.34 grams of cocaine** in and on the safe."  (Crim. Doc. 50 at ¶ 17) (emphasis in original).

Hammonds claims the prosecution knowingly withheld this exculpatory evidence from the district court to charge him with a conspiracy involving 500 grams of cocaine.  (Civ. Doc. 4 at 22)  He claims that "government documents were falsified by [AUSA] Preston" in order "to undermin[e] the court and the defendant."  (Civ. Doc. 4 at 22 and 25; Civ. Doc. 20 at 4)  Furthermore, he claims that counsel rendered ineffective assistance, which excuses his procedural default of this claim, by not challenging the amount of cocaine charged in the indictment and attributed to him in the presentence report.

In response, the United States acknowledges that "[t]he 408.34 grams of cocaine listed in [presentence report] ¶ 17 erroneously included 287.55 grams

of unidentified byproduct."[3]  (Civ. Doc. 11 at 3, n.3)  Nevertheless, the United States argues, Hammonds was not prejudiced by this error because he was held accountable for all of the cocaine discovered in the primary bedroom, which amounted to "at least **a total of 863.74 grams of cocaine**."  (Civ. Doc. 11 at 13; Crim. Doc. 50 at ¶18)

The United States correctly argues that Hammonds was not prejudiced by the error in the presentence report.  Hammonds agreed he was accountable for the cocaine discovered in the primary bedroom, which amounted to 863.74 grams.  (Civ. Doc. 11 at 13; Crim. Doc. 50 at ¶ 18) After reducing the total amount of cocaine discovered in the primary bedroom (863.74 grams) by the amount of unidentified byproduct discovered in the safe (287.55 grams), Hammonds remains accountable for more than 500 grams of cocaine (576.19 grams).  His base offense level remains unchanged because, under U.S. Sentencing Guidelines § 2D1.1(c)(8) (2014), a base offense level of 24 applies when the defendant is accountable for at least 500 grams but less than two kilograms of cocaine.

Furthermore, Hammonds was not prejudiced the error because he admitted to participating in a conspiracy involving 500 grams or more of cocaine.  In the plea agreement that he agreed that he "participated in an

---

[3] The forensic laboratory report on which Hammonds bases his claim shows the weight of the substances discovered in the safe.  (Civ. Doc. 11-1)

unlawful agreement with others to possess with intent to distribute 500 grams or more of cocaine." (Crim. Doc. 27 at 13)   At the plea hearing he again acknowledged that he both acquired and sold no less than 500 grams of cocaine (Crim. Doc. 79 at 7–8):

THE COURT: And this indicates that in fact you, along with others, were obtaining cocaine and in turn distributing them.

Is that true?

THE DEFENDANT: Yes.

THE COURT: And was the—did you know it was cocaine that you were obtaining?

THE DEFENDANT: Fairly sure it was, yes.

THE COURT: Okay. And was there more than 500 grams of cocaine that was obtained during this process?

THE DEFENDANT: I think so.

THE COURT: Okay.  And, Mr. Irvin, any dispute about that?

MR. IRVIN: No, there's no dispute about that.

Hammonds's claim that the United States withheld the exculpatory lab reports is contradicted by the record.  At sentencing defense counsel notified the district court that the substance found in the safe contained unidentified byproduct but acknowledged that this information did not alter the fact that

Hammonds was accountable for more than 500 grams of cocaine (Crim. Doc.

82 at 4–5):

| | |
|---|---|
| MR. IRVIN: | Judge, to be factually accurate regarding what was found in the safe, it's not going to change the outcome of the weight, per se, total, but the cocaine had not yet been mixed with what we call commonly as cut to bring us to the 408 grams. That's my recollection. |
| | That's just what was in the safe. It's not going to change the total amount of weight for the total of 500 grams, and I think that's something I have spoken with Mr. Preston about. There was cut and uncut. If I'm incorrect, I think Mr. Preston can correct me. So to be factually accurate it was separated. |
| THE COURT: | Mr. Preston, do you have any objection to the recitation by Mr. Irvin? |
| MR. PRESTON: | There were multiple substances contained in the safe, Your Honor, and I didn't bring a lab report to give a more specific number than what's already in the presentence investigation report. |
| THE COURT: | Okay. Is that acceptable? |
| MR. IRVIN: | That's acceptable. |

Counsel was not ineffective for not raising a meritless challenge to the

overall amount of cocaine attributed to Hammonds. *See Denson v. United*

*States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance."); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

Finally, Hammonds fails to support with any details his vague accusation that AUSA Preston falsified government documents.  He neither identifies the allegedly falsified documents nor describes how the documents were falsified.  Such claim is "wholly incredible" and requires no further discussion. *Tejada*, 941 F.2d at 1559.

### d.    Ground Four

Hammonds claims that the sentencing enhancement imposed under 21 U.S.C. § 841(b)(1)(B) violates the Double Jeopardy Clause because the enhancement resulted in a duplicative punishment for his prior felony convictions.  (Civ. Doc. 4 at 22–23)  He argues that his 1998 Florida conviction for possession of marijuana was dismissed and therefore could not serve as a proper basis for the enhancement.  (*Id*.)  He further argues that he "paid his debt to society" for his 1999 federal conviction for conspiracy to possess with the intent to distribute cocaine, and he is not "a Major Player who warrants the enhancement penalty."  (*Id*.)  He argues that counsel rendered ineffective assistance, which excuses his procedural default of this claim, by failing to object to the sentencing enhancement.  (*Id*. at 23)

18

"The Double Jeopardy Clause provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *United States v. Gomez*, 219 F. App'x 889, 891 (11th Cir. 2007) (quoting U.S. Const. amend. V.). "The Double Jeopardy Clause protects against the imposition of multiple punishments for the same offense." *Id.* (quotations omitted).

However, "[e]nhancement statutes 'do not change the penalty imposed for the earlier conviction,' but 'penaliz[e] only the last offense committed by the defendant.'" *Id.* (quoting *Nichols v. United States*, 511 U.S. 738, 747 (1994)). "[S]entencing enhancements are not construed as additional punishments for a previous offense, but only increase a sentence because of the manner of the crime, and the enhancements are neither a new jeopardy nor an additional penalty for the earlier crimes, but a harsher punishment for the newest crime." *Id.* (rejecting a Double Jeopardy challenge to a sentence enhanced because of prior felony convictions).

The enhancement of Hammonds's sentence under § 841(b)(1)(B) does not violate the Double Jeopardy Clause because it was supported by his 1999 federal conviction for conspiracy to possess with the intent to distribute cocaine for which he received a sentence of 59 months imprisonment.  (Crim. Doc. 50 at ¶45)  Counsel did not perform deficiently by not raising a meritless challenge to the § 841(b)(1)(B) enhancement.  *See Denson,* 804 F.3d at 1342; *Winfield,*

19

960 F.2d at 974.  Therefore, Hammonds fails to show cause and prejudice to excuse his procedural default of this claim.

### 2.    Actual Innocence

Because Hammonds fails to show that counsel's alleged ineffectiveness constitutes cause and prejudice to excuse his procedural default of his claims in Grounds One through Four, his procedural default can be excused only if he demonstrates his actual innocence.  *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency.  *Id*.  To show actual innocence of the offense of conviction, a movant "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of the new evidence of innocence.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  The "prototypical example of 'actual innocence' in a colloquial sense is the case where the government has convicted the wrong person of the crime." *Sawyer v. Whitely*, 505 U.S. 333, 349 (1992).

Hammonds does not contend that he is factually innocent of his offense of conviction.  In fact, he undermines any suggestion of innocence by repeatedly asking to be resentenced.  (Civ. Doc. 4 at 23; Civ. Doc. 20 at 7)  Consequently,

Hammonds fails to show that his actual innocence excuses his procedural default of his claims in Grounds One through Four.[4]

**B.   Merits**

Hammonds's remaining claims of ineffective assistance of counsel are set forth in Ground Five. (Civ. Doc. 4 at 23–27; Civ. Doc. 20 at 3–4) Hammonds claims that Irvin advised him to plead guilty in exchange for a sentence of 18 months to two years. (*Id.*) In his responsive affidavit, Irvin denies promising Hammonds a shorter sentence. (Civ. Doc. 11-2 at 6–7)

The plea agreement and Hammonds's sworn statements at the plea hearing refute the claim that counsel promised him a shorter sentence. The plea agreement contains no promise of a specific sentence. (Crim. Doc. 27 at 1) Rather, in the plea agreement, Hammonds agreed that he faced a mandatory minimum term of 120 months. (*Id.*) At the plea hearing Hammonds confirmed that counsel reviewed each page of the plea agreement with him, he understood the plea agreement, and he was satisfied with counsel's representation. (Crim. Doc. 79 at 16–19) He confirmed he understood that he faced a mandatory minimum term of 120 months, that the sentencing guidelines were advisory, and that he could not withdraw his guilty plea if his sentence was longer than expected. (*Id.* at 21–27) Again, he

---

[4] In addition to being procedurally defaulted, the claims in Grounds One through Four lack merit for the reasons set forth in sections II(A)(1)(a)–(d).

confirmed that no one had promised him anything, other than the terms of the plea agreement, in exchange for his guilty plea. (*Id.*) Finally, he understood that the district court was not a party to the plea agreement and could reject the plea agreement, in which case he could not withdraw his guilty plea. (*Id.*)

Other than his own conclusory assertions that counsel promised him a shorter sentence in exchange for his guilty plea, Hammonds presents no argument or evidence to rebut his affirmations under oath at the plea hearing. And, the plea agreement contains no promise of a specific sentence. Hammonds establishes neither that counsel was deficient in promising him a shorter sentence nor that there is a reasonable probability that, but for counsel's promise, he would not have pleaded guilty and would have proceeded to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Hammonds claims that Irvin promised to represent him both on appeal and in a § 2255 proceeding. (Civ. Doc. 4 at 23–27; Civ. Doc. 20 at 3–4) According to Hammonds, Irvin abandoned him on appeal because he could not afford to pay an additional $15,000.00 in fees. (*Id.*) Irvin avers that he filed a motion for appointment of appellate counsel on Hammonds's behalf and never promised to represent him in a § 2255 proceeding. (Civ. Doc. 11-2 at 6–7)

Hammonds is entitled to no relief on this claim. He was not prejudiced by counsel's alleged promises to represent him because he was appointed counsel on direct appeal but voluntarily chose to dismiss his appeal. (Crim.

22

Docs. 93, 98–100)   Furthermore, he has demonstrated no constitutional, statutory, or rule-based right to counsel in this proceeding. *See United States v. Johnson*, 842 F. App'x 402, 405 (11th Cir. 2021) (listing the sources from which a § 2255 indigent petitioner may derive a right to counsel).

Finally, Hammonds vaguely suggests in his reply that DerOvanesian rendered ineffective assistance of appellate counsel for not objecting to the drug quantity attributed to him.   (Civ. Doc. 20 at 6–7)   He explains that DerOvanesian advised him to dismiss his direct appeal because his claims were better suited for a § 2255 motion. (Civ. Doc. 4 at 23)

To the extent Hammonds intends to assert a claim of ineffective assistance of appellate counsel, such claim is not properly before the district court because he neglected to assert it in his amended § 2255 motion. *See Prada v. United States*, 692 F. App'x 572, 574 (11th Cir. 2017) (affirming the district court's refusal to consider a new issue raised in a reply brief).   New claims raised in a reply brief are barred even when the petitioner is proceeding without counsel. *Enriques v. United States*, 416 F. App'x 849, 850 (11th Cir. 2011) ("Although pro se pleadings are construed more liberally than those filed by counsel, . . . issues not argued by a pro se litigant in his initial brief are deemed waived.").   And, even if properly raised, the claim lacks merit. DerOvanesian was not ineffective for not raising a meritless challenge to the drug quantity attributed to Hammonds. *See Chandler*, 240 F.3d at 917

("[A]ppellate counsel was not ineffective for failing to raise a nonmeritorious issue.").

## III.   Conclusion

Hammonds's amended motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 4) is **DENIED**. The clerk is directed to enter a judgment against Hammonds, close this case, and enter a copy of this order in the criminal case.

**CERTIFICATE OF APPEALABILITY**

**AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Hammonds is not entitled to a certificate of appealability ("COA"). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Hammonds must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues,

Hammonds is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

A certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is **DENIED**. Hammonds must obtain permission from the circuit court to appeal in forma pauperis.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 9th day of June 23.

_____

**TOM BARBER**
**U.S. DISTRICT JUDGE**

25